IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JOBRI, L.L.C., )
 )
      Plaintiff and )
      Counter- )
      Defendant, )
 )
v. ) Case No. CIV-09-296-KEW
 )
SELECT COMFORT CORPORATION, )
 )
      Defendant and )
      Counter- )
      Plaintiff. )

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment filed May 7, 2010 (Docket Entry #47). The Motion is at issue. Upon review and consideration of the briefs submitted by the parties, this Court renders this ruling.

Between 2006 and 2008, Plaintiff Jobri, L.L.C. ("Jobri") and Defendant Select Comfort Corporation ("Select Comfort") negotiated a business relationship whereby Jobri would supply Select Comfort with motorized adjustable bed foundations. The parties negotiated a Master Supply Agreement (the "MSA"). While a dispute exists as to whether the parties reached an agreement as to the terms of the MSA, Select Comfort did not execute the MSA.

Problems arose in the relationship in April or May of 2008 when Select Comfort informed Jobri it had insufficient funds on hand to prepay for the outstanding purchase orders. As a result,

the parties reached an agreement whereby Select Comfort would pay $700,698.00 to Jobri, which would retain the funds through the first six months of deliveries by Jobri. In addition, Select Comfort would pay in full for future orders with payments due upon the receipt of Jobri's shipments at U.S. Customs. After six months of timely payments by Select Comfort, Jobri would return the $77,698.00 to Select Comfort in $100,000.00 per month increments.

Thereafter, in September of 2008, Select Comfort submitted new purchase orders for deliveries in December of 2008 through February of 2009. Eventually, the delivery date for the bed foundations was extended to January 20, 2009.

Select Comfort contends negotiations with Jobri at all times since 2006 contemplated the foundations would be powered by drive motors made by Okin, a company in Germany. Jobri contends Select Comfort required that Jobri designate backup suppliers for all major components in the foundations, including the drive motors. Jobri designated Beds & Mo(o)re ("B & M") as the backup supplier for the motors.

In December of 2008, Jobri informed Select Comfort that Okin was in bankruptcy and proposed the use of the B & M motor. Jobri contends the B & M motor was of identical quality to the Okin motor. Upon receiving this notification, a representative of Select Comfort e-mailed Jobri to acknowledge that a different motor

was to be used in the foundations and expressing that "our R & D team has major concerns with this direction." The e-mail then outlined the areas of concern, including FCC approval for the motor, evidence of UL/TUV compliance, durability test prove-out and testing to demonstrate the new motors met or exceeded Select Comfort's design standards. Select Comfort's representative requested documentation evincing the approvals and testing as well as two samples of the B & M motor. The e-mail concluded by stating "[t]o reiterate, do NOT send any orders until SC has approved the new motor for production." The parties agree that Select Comfort's approval of the new motors was required before delivery could begin. No deliveries were ever made of the foundations contemplated by the purchase orders.

On April 8, 2009, Select Comfort canceled the purchase orders and requested the return of its pre-payment. The e-mail from Select Comfort states that it had "faced tough environments in 2008" with business experiencing "dramatic year over year declines in both revenue and unit sales" which continued into 2009. Select Comfort shared that it suffered a loss of $70 million in 2008 and was forced to work with creditors and suppliers for modified terms. The e-mail states Select Comfort reassessed its contract with Jobri and "determined at this time it not (sic) possible given the challenges our business is dealing with and the difficult financial

3

situation we are working through to continue forward. We do not have the flexibility with either cash or inventory to accommodate the business plan that we contemplated, not the long supply chain involved." Select Comfort then stated it was cancelling the purchase orders for the foundations. The e-mail requested the return of the $700,698.00 prepayment but recognized that B & M had spent funds in contemplation of making the foundations and "Select Comfort will only take responsibility for Select Comfort specific materials so long as the quantities are consistent with requirements to meet the purchase orders originally issued."

On August 3, 2009, Jobri initiated this action for breach of the contracts represented in the MSA and the purchase orders, seeking damages in the amount of $1,508,165.00. As stated in the Complaint, this amount is comprised of $460,600.00 in constructed beds, testing, obtaining venture capital, completing graphics, and other marketing materials. The remaining $1,047,565.00 represents the amount Select Comfort would have paid under the three purchase orders for the foundations ordered. On October 6, 2009, Select Comfort counterclaimed for breach of contract, promissory estoppel, and unjust enrichment requesting, *inter alia*, judgment for the $700,698.00 it prepaid under the agreement of the parties.

Select Comfort seeks summary judgment on the breach of contract claim asserted by Jobri because (1) Jobri informed Select

Comfort could not deliver conforming goods as defined by the Uniform Commercial Code ("UCC") and, therefore, Select Comfort was entitled to cancel the contract; (2) Jobri never delivered conforming goods, allowing Select Comfort to cancel the contract without payment; and (3) finalization and execution of the MSA was a condition precedent to Select Comfort accepting and paying for the foundations and the parties never reached agreement to the MSA.

Select Comfort then argues that even if it breached the purchase orders, Jobri has not identified any recoverable damages. Select Comfort contends the UCC precludes recovery of the elements of damages identified by Jobri. Select Comfort also asserts Jobri had an obligation to mitigate its damages which it failed to do.

On its counterclaim, Select Comfort contends it is entitled to receive the prepayments it made since Jobri failed to deliver conforming goods.

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party

for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Summary judgment is inappropriate on the breach of contract claim on many fronts. Among the disputed facts which precludes summary judgment are the following:

1) Whether an "agreed to" MSA was a prerequisite to the purchase orders becoming effective, whether the parties "agreed to" an MSA, and whether that "agreement" required an executed MSA. On purchase order dated September 30, 2008, states "[t]his PO is contingent on: 1) B & M/Jobri agreeing to a Master Supply Agreement . . . ." The other two purchase orders forming the basis of this lawsuit do not contain similar language. The omission of this language from some of the contracts gives rise to a question as to whether the agreement to the MSA was a condition precedent on each contract or

at all. While it is not disputed that Select Comfort never executed the draft of an MSA, it is disputed whether the parties B & M/Jobri "agreed to" an MSA.

2) Whether Jobri's informing of Select Comfort of the inability to provide Okin motors for the foundations constituted a repudiation of the agreement of the parties. Jobri contends Select Comfort insisted upon alternative suppliers of component parts, including the Okin motors. If a trier of fact concludes such was the case, it could also conclude Jobri was not repudiating its agreements with Select Comfort in informing it that the Okin motor was not available and an alternative was being proposed, albeit with Select Comfort's final approval.

Moreover, while testimony indicates Okin motors were Select Comfort's desired component in the foundations, none of the written agreements provided in the record specifically require Okin motors. Indeed, Select Comfort relies heavily upon the testimony of Jobri's owner/operator who stated, first, he did not recall whether the blueprints required Okin motors then testified the Okin motor was specified on the blueprints. He has subsequently offered an affidavit which states he reviewed the blueprints and the Okin motor was not specified. The blueprints were subsequently provided under seal. A review of these blueprints does not reveal the identification of the Okin motor by name. It is, therefore,

disputed as to whether Jobri repudiated the agreements of the parties in informing Select Comfort that the Okin motor was not available and that the B & M motor would be used in its stead.

3) Whether the language Select Comfort utilized in its alleged rejection of allegedly nonconforming goods was, in fact, a rejection. Select Comfort's protestations to the contrary notwithstanding, the language employed in the December 21, 2008 e-mail, while showing concern in the use of the B & M motor, appears to contemplate an approval process by which the B & M motor could be used in the foundations rather than a wholesale rejection of the alternative motor. A trier of fact could conclude that Select Comfort was not rejecting the contract through this language but rather was investigating the use of the alternative motor. While Select Comfort is correct that since no goods were shipped, it was not required to seasonably reject delivered or tendered goods under the UCC at Okla. Stat. tit. 12A § 2-601, the language used by Select Comfort can be interpreted as a desire to consider the alternative motor.

4) Whether Jobri's alleged providing of nonconforming goods was the reason for Select Comfort's cancellation of the purchase orders. Select Comfort states that it was exercising its remedies under the UCC in light of Jobri's alleged repudiation of the agreement of the parties. However, the April 8, 2009 e-mail from

8

Select Comfort which actually cancels the contracts does not mention any such repudiation but rather only Select Comfort's inability to financially meet its obligations under the agreements. This e-mail could be interpreted by the trier of fact as containing the basis for the cancellation regardless of Jobri's actions in regard to the motor.

As a result in these multiple interpretations of the evidence in the record, summary judgment in favor of Select Comfort on the breach of contract claim asserted by Jobri is inappropriate at this time.

Select Comfort also contends that, even if it breached the contract with Jobri, the damages sought by Jobri are not recoverable. Select Comfort first generally contends Jobri failed to mitigate its damages. The record is wholly inadequate for this Court to draw this conclusion.

Specifically, Select Comfort asserts Jobri's claim to recover venture capital is unsupported since Select Comfort never agreed to reimburse for that expense. Jobri contends B & M required $1,000,000.00 as prepayment against future orders. It further alleges that Select Comfort was financially unable to provide the entire amount so Jobri was required to secure venture capital in the approximate amount of $450,000.00 to cover the shortfall in the amount provided by Select Comfort. This recovery of venture

capital relies upon the theory of an "implied contract." Jobri has failed to explain the existence of such a contract. Under Oklahoma law, an implied contract "exist[s] where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract." Jones v. Univ. of Central Okla., 910 P.2d 987, 989 (Okla. 1995). Jobri has not directed this Court to any conduct between the parties which would indicate an intent to contract for Select Comfort to reimburse Jobri for an expenditure of venture capital. Indeed, the evidence is contrary to this position. Jobri admits that Select Comfort did not agree to reimburse and Jobri did not expect reimbursement for Jobri's start-up expenses claimed as damages in this action. As a result, no evidentiary or legal foundation for the recovery of lost venture capital has been shown.

Similarly, Jobri seeks lost profits from the agreement to establish a fulfillment center in connection with the bed foundations it was to supply as well as travel expenses in touring and viewing the motor facilities in Germany. Again, these avenues of recovery depend upon the existence of an implied contract between Jobri and Select Comfort to pay for these expenses.[1] No

---

[1] Jobri states it is relying upon the theory of implied contract to recover these damages in its response to the summary judgment motion. Curiously, however, it also states repeatedly "if a jury should determine that SC did not explicitly agree to reimburse Jobri," it would rely upon

10

such implied contract has been demonstrated through the conduct of the parties and, therefore, any associated damages are unrecoverable in this action.

Jobri also seeks the full contract price for the goods which were ordered but not delivered, relying upon Okla. Stat. tit. 12A § 2-709. This statute states in pertinent part:

> (1) When the buyer fails to pay the price as it becomes due the seller may recovery, together with any incidental damages under the next section, the price
>
> \* \* \*
>
> (b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

Based upon the evidence provided, this Court is unable to ascertain whether Jobri has actually paid for any foundations, taken delivery from B & M of any product, or has made any effort to resell the foundations if it did take delivery and pay for them. Select Comfort identifies evidence from deposition testimony which would indicate Jobri did not pay B & M anything arising out of the purchase orders, but that testimony does not indicate whether this includes monies from the $1,000,000.00 prepayment amount that may have been paid to B & M. The testimony also indicates the deponent

---

the implied contract theory. Jobri admitted in the undisputed facts that Select Comfort did not agree to reimburse for start-up costs and offers no evidence to the contrary or to bring the issue factually into question.

lacked specific knowledge of the terms and conditions of the post-cancellation business relationship between Jobri and B & M and the testimony is ambiguous as to the precise production status of the foundations. Taking the facts in a light most favorable to Jobri as the non-moving party, the facts are insufficiently developed for this Court to conclude the conditions of § 2-709 have been met. Jobri is forewarned, however, that it will bear the burden of proving the delivery of the foundations and its efforts to resell at trial. If that burden is not carried, Jobri will be limited to the damages provided by Okla. Stat. tit. 12A § 2-708, in the event Jobri is able to prove non-acceptance or repudiation by Select Comfort. Okla. Stat. tit. 12A § 2-709(3).

As a final matter, Select Comfort contends it is entitled to summary judgment on its counterclaim for the return of the prepayment amount. Judgment for Select Comfort would require a finding that Jobri repudiated the agreement, that Jobri received the funds, and that the funds advanced were intended to pay for product as opposed to being paid to insure B & M's continued participation in light of Select Comfort's financial status. All of these matters are subject to multiple interpretations and alternative views of disputed facts which are best left to the trier of fact rather than summary judgment.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary

Judgment filed May 7, 2010 (Docket Entry #47) is hereby **GRANTED**, in part, in that Jobri's claims for damages related to lost venture capital, lost opportunity costs, lost profits, and travel expenses are hereby **DISMISSED**. The remainder of the Motion is hereby **DENIED**.

IT IS SO ORDERED this 27th day of July, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE